We move to case number three, U.S. v. Adams. Case number three, U.S. v. Adams. Thank you. May it please the court. Good morning. My name is Mark Richards. I'm representing Deshon Adams in this matter. This matter arises out of a sentencing that occurred before Judge Griesbach. The sentencing was on June 14th, 2015. The timing and the way the things happened, I think, are somewhat important. On approximately June 7th, I received a memorandum from opposing counsel. And that memorandum put forth numerous uncharged, undisclosed, prior suspected criminal conduct that my client was involved in. At that point, it was the first time I had become aware of that. And that initial set of discovery was turned over to me. It's referred to in the brief that it was turned over. But it was turned over late and much after the plea. We went forward with the sentencing on June 14th. The guideline issues were dealt with. Both sides argued sentencing. My client was given allocution. And I raised the issue that one of the things in the government's brief I didn't believe occurred. And it was accusing my client of involvement in a homicide at a local convenience store. And that was based upon what it said in the police reports, purported interviews of my client, and some independent research I did in the local newspaper and could not find anything. Judge Griesbach said that that was, he thought, a problem and wanted it checked into. And the matter was set over for approximately a week. It then became a little bit longer because of some scheduling issues. The government admitted that it was not a homicide, it was a shooting, and they stood by the general allegations of those things and put forth a second memorandum putting forth all of the other things and adding a little bit more detail. They talk about corroboration for these things. We then went forth with the sentencing. And at the sentencing on June 30th, at that time, the only thing that was really added was the government put forth Investigator Klinkhammer from the Racine Police Department. And he testified to information that he had received from confidential informants or confidential informants that had given other detectives information. At approximately page 30 of the transcript, there's the beginning of the testimony where the government is questioning him, and he asks about what he knows about this confidential informant to establish reliability. And in that instance, he says, I don't know anything about that. That was another detective's confidential informant. He talks, basically there were three confidential informants that this detective was aware of. Two of them, according to him, were friends and had provided information on numerous offenses and things like that. And one was so new that he was not reliable. And then the state takes that along with other shootings and things like that that occurred and says, because these two informants said it, it must be so he was involved in it. I can say that my client was never arrested, never charged on any of these offenses at any time in state or federal court. The ability of myself to rebut as an advocate for my client any information that is provided by these confidential informants without knowing how they saw it, what they saw it, their relationship, we know that they were either paid in reduced charges or money, I think is an impossible task for an advocate. Can I ask you a quick question about that, Mr. Richards? I think I understand the point you're making about the due process challenges with this sort of information. I thought you were also making, at least in your appellate brief, the argument you never got the chance. But I didn't think you'd ask, in essence, for yet a further delay, another hearing. I didn't ask for a further delay. I did not believe that the court was going to turn over who these confidential informants were. I mean, I can ask, I can jump up and down and shake my fist, but it's not going to happen. Let me ask you. I'll tell you, if the district judge had found on the basis of these confidential informants, yeah, I think Mr. Adams was involved in these shootings, based on what the CIs told other detectives whose information was then gathered by the one fellow who testified, I think that would present a very serious due process problem. When I look at the district judge's words in coping with this problem, though, it looks to me like he's saying, look, I'm not going to make a finding on every one of these incidents. But looking at the record as a whole, though, with the defendant's own words and other indications about his background, the district judge does say he's well involved in the violent gang culture, including the use of firearms and the threatening of people and using firearms against people. It's hard for me to see how that is an unfair or inaccurate characterization of Mr. Adams. I think there are some statements that are made about my client, and I discuss those in my sentencing remarks. And I would, you know, put it forth that it was a young and mature individual who was being goaded on by law enforcement. He says a lot of stupid stuff. Digging his own hole there. Without a doubt. I think trying to separate that out from spending quite a bit of time of the sentencing on five, six, seven different shootings, two different potential homicides, one proven not to be a homicide, then the other homicide involving jail informants, I think that that's where the problem comes in. I went over this with another attorney and I talked to him about it. Just because it was troubling. And I don't know how I can protect my client's rights. And we asked you to protect his rights. Right. And I'm trying to do the best I can, but I'd love to be able to ask that question of a confidential informant. What did you see? Who told you? We don't even know if this is based on personal knowledge. The one homicide that the government relies on are two jailhouse snitches that are in a pod together, supposedly for a short period of time with my client who was only in the jail for about 13 days. And they come up with this six months after the purported disclosure. One can only wonder why they waited that long if it was all true or anything. So I think by the sheer volume of this information, basically it's being sourced by two individuals. I think it was fundamentally unfair to my client. We're talking about a felon in possession of a firearm case. I understand the sentencing, the sentence ultimately given out by Judge Hriesbach was within the guidelines. And I know he gave some talk in the sentencing remarks about giving him the max. And all I can say is from my experience of practicing in the Eastern District for quite some time, an upper guideline sentence is a rarity and not the exception. But it's presumptively reasonable. It is under the facts. And it sounds like this is more where they want to go beyond the guidelines, this kind of evidence that they're producing, the government. One could say that. I mean, there was a guideline agreement. There was an agreement to recommend within the guideline. And there was what was put forth at the sentencing hearing. The second brief that you filed, did that take into account the letter that Mr. Adams had written himself in response to the initial brief? The government file, I filed a 3553. Sorry, no, I'm talking about in response to the original Anders brief. Mr. Adams filed his handwritten response. If you could read all of that, you're in a much better position than I am. My client is less than happy with my representation. I understand. Okay. All right. Thank you. Corey. Good morning. My name is Assistant United States Attorney Zach Corey. I'm an Assistant United States Attorney in the Eastern District of Wisconsin, and I'm representing the United States on this appeal. May it please the court. Dashaun Adams pleaded guilty to being a felon in possession of a firearm and received a sentence within his correctly calculated guidelines. In two sentencing memoranda and orally at sentence, counsel for the United States summarized various police reports that recounted seven different shootings that Mr. Adams had been implicated in during the brief periods of time that he had not been incarcerated. The reports were provided to the defense in the discovery. The sentencing court carefully considered these factors and relied on this information in a general and limited manner while considering 3553A factors. The sentencing courts have wide discretion under the guidelines to, quote, consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy. The commentary to that section even states, quote, written statements of counsel or affidavits of witnesses may be adequate under many circumstances. So how about a report of unidentified CIs who are getting probably some benefit for the information they provide and without any indication of firsthand knowledge? If it was, that would be a different question than what is here. If it was just based solely on a CI as you described in that, that may not have sufficient indicia of reliability. But the reports here were corroborated in many other ways, victim interviews, witness interviews, ballistics information, jailhouse informants, telephone calls, recorded jail calls. Photo lineups. Photo lineups. So numerous other ways that showed that these reports had sufficient indicia of reliability. And they certainly had sufficient indicia of reliability for the general and extremely limited manner that the district court relied on them. He relied on them. He didn't change the guidelines.  Now, suppose we had this information in a case where you got a 924C charge for brandishing. You've got a statutory range of seven to life, right, consecutive to the underlying crime. Would this kind of information raise a due process problem if it became the basis for the judge to impose a life sentence, do you think? It's certainly closer and there might be more of a sliding scale depending on the amount, which is suggested by this court in Morrison in the drug weight cases where 97 percent of the drug weight was due to one report where it was facially. It didn't make sense where you're paying more than twice for an eighth of an ounce for a sixteenth of an ounce. And so perhaps there needs to be more sufficient indicia of reliability the farther you rely on it for the length of the sentence. As you know, we wrestle with this problem a lot. And we've got all these cases that talk about the problems with the arrests that have to be included in a pre-sentence report, whether they led to convictions or not, and then what should the sentencing judge do about them. Here we don't even have arrests, right? That's true, partially perhaps because Mr. Adams has been incarcerated largely since age 14, and so to talk to him you don't need to arrest him, you can go see him in prison. But it's a fair point. Turning to the second issue raised by the appellants, nothing cited by the appellant or that the government is aware of requires these reports to be formally entered into evidence. The case law and the guidelines and the commentary only suggest that sentencing courts have sufficient indicia of reliability, and for the reasons stated above, they do. And to the extent that argument is now advanced on appeal, it has been forfeited and must be reviewed under plain error. There wasn't an error. It wasn't even plain. And it certainly, given the judge's comments, it very likely did not affect the outcome. As he said, based on protecting the public, perhaps life could have been appropriate. That obviously would have been over the statutory maximum. He said the record could have supported a 120-month statutory maximum, but at a minimum the top of the guidelines was what was appropriate. And then finally, Mr. Adams had numerous opportunities to present evidence and to rebut the evidence provided by the government. He did to some degree, and to the extent he did, it was his choice. So unless there's additional questions. Thank you, counsel. Mr. Richards. Thank you. Just briefly in response, picking up on the court's question regarding the 924C, I understand what the court's asking, and the only thing I can say to that is to me it sounds like, well, since he wasn't facing life, it's good enough for government work. That's not what I meant. Oh, good. Because the kind that my client's looking at is still substantial. And I think that it's a real problem. And the government talks a lot about collaboration. The issue regarding that in the cases they cite Tankson, that's where a defendant's own words were used to enhance the drug weight, admission against penal interest. In Freeman, when they're enhancing the sentence and things like that, putting a drug weight, they're talking about there had been a conviction of conspiracy, the conspiracy was thrown out, and they went with the lowest weight possible from one of the witnesses who was credible. This is not related in any way, shape, or form. It's not the same gun he was arrested with. There's nothing. And as I said, we did not have any of the information regarding what these informants were given for the specific information. It was broad generalities. And as I said, not knowing who the informants are, we are not able to effectively fight that. Thank you. Thank you. Mr. Richards, you were appointed in this case? Yes, I was. You've done an excellent job representing your client because, as I indicated earlier, the sentence was presumptively reasonable, and that's a pretty hard standard to overcome. So thank you very much for your representation of your client. Thanks to both CASEL and the cases taken under advisement.